## LEUDINGHAUS BROS. *v.* DANT & RUSSELL.

### (175 Pac. 75.)

**Principal and Agent—Undisclosed Principal—Burden of Proof.**

1. In an action for the value of a carload of lumber, defendant, setting up counterclaims on the ground its sale of lumber to a corporation was a sale to its officers and stockholders, including plaintiffs, and that as undisclosed principals they were liable for the corporation's default in payment, had the burden of proof.

**Principal and Agent—Undisclosed Principal—Sufficiency of Evidence.**

2. In an action by a partnership for the value of a carload of lumber, evidence *held* not to sustain counterclaims on account of lumber delivered by defendant to a corporation, on the ground that such sale was a sale to plaintiffs as undisclosed principals.

[As to suits by undisclosed principals on contracts made by their agents, see note in 55 Am. St. Rep. 916.]

From Multnomah: ROBERT G. MORROW, Judge.

Department 2.

The plaintiffs commenced this action against the defendant corporation to recover $1,049.16, the alleged value of a carload of lumber.

The defendant admits the purchase and the value, and as a defense pleads six separate counterclaims amounting to $821.15. The Northwest Lumber Agency is a corporation organized under the laws of the State of Washington on or about February 20, 1912, with its principal office at Tacoma; with authority,

"to purchase, acquire, hold, exchange, dispose of or sell on commission or otherwise, lumber or other timber products, and to act as agent or broker in the purchase, sale or disposition of any personal property."

The different items of counterclaim were for and on account of lumber which the defendant furnished and delivered to, and at the instance of, the Northwest Lumber Agency on and between April 13, 1915, and April 24, 1915, for which the defendant never received payment. In its further and separate answer the defendant alleges that it

"sold and delivered to the plaintiffs acting through the said Northwest Lumber Agency, and at the special instance and request of said Northwest Lumber Agency, which was acting as agent of the plaintiffs, and plaintiffs were the undisclosed principals of said Northwest Lumber Agency in making such purchase," and "that defendant has discovered that said plaintiffs were the undisclosed principals of said Northwest Lumber Agency in making said purchase and defendant has demanded payment of plaintiffs";

That in truth and fact the alleged sales made to the Northwest Lumber Agency were made to the plaintiffs, and the plaintiffs were liable to defendant for the amount of said sales. On the trial it was stipulated that the defendant did purchase the lumber from the plaintiffs, at the agreed price of $1,049.15, and that if the defendant is entitled to recover on its counterclaims, the amounts thereof are correct.

To prove its counterclaims against the plaintiffs, the defendant introduced in evidence the corporate records of the Northwest Lumber Agency, certain letters and orders for lumber, a copy of the bond, together with two stock certificates in that company, and called as witnesses C. L. Brown, F. W. Luedinghaus and A. K. Martin, officers of the company. From this evidence and testimony it appears that the capital stock of the company was $5,000, divided into fifty shares of the par value of $100 each; that on April 27, 1912, the company completed its organization and elected its officers, C. O. Sutherland as president, T. J. Handforth, secretary, and F. J. Shields, manager. Neither the stock certificate book nor the stock ledger is in evidence and it does not appear from the corporate minutes who were the actual stockholders of the corporation at the time it was organized, or when the members became stockholders. But under date of September 20, 1912, the minutes show that the plaintiffs were present and represented at a stockholders' meeting of the company. The stock certificates offered in evidence show that one for two shares was issued to George F. Luedinghaus on November 13, 1914, and another for two shares was issued to F. W. Luedinghaus on the same date, and the testimony shows that the stock was fully paid for. It also shows that at different times capital stock of the company was issued to and held by a number of lumber companies from which it purchased lumber and with which it had large business dealings.

When the defense rested, the plaintiffs filed a motion for a nonsuit as to the counterclaims and for a directed verdict, which was sustained, and judgment was entered on the verdict, from which this appeal is

89 Or.—38

taken.    The question presented is whether there was sufficient evidence of the defendant's counterclaims against the plaintiffs to be submitted to the jury.

                                        AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Ralph R. Duniway.*

For respondents there was a brief over the name of *Messrs. Magill, McKenny & Brush,* with an oral argument by *Mr. W. F. Magill.*

JOHNS, J.—1. The legal principles contended for by defendant's counsel are sound and sustained by the authorities cited.    The defense is founded upon the theory that the Northwest Lumber Agency is a "blind" corporation and that in the sale and purchase of lumber by that company it was the agent of, and acting for, the owners of the different mill companies which owned or held stock in the Northwest Lumber Agency; that a sale to that company was in truth and fact a sale to the individual stockholders of the company and that because the plaintiffs were personally stockholders, and one of them president of the company, they are liable to the defendant for the amount of its unpaid claim against the Northwest Lumber Agency.    The *onus probandi* was on the defendant. Much latitude was allowed by the trial court.

2. The plaintiffs were not incorporators and there is no testimony that they were original stockholders of the Northwest Lumber Agency or that they ever owned more than four of the fifty shares of its capital stock, which they acquired November 13, 1914, and for which they paid par value.    Neither is there any evidence that their dealings and relations with the Northwest Lumber Agency were at all different from those of

any other stockholder, and there is no more testimony against the plaintiffs as to liability on the counterclaims than there is against any other officer or stockholder. The orders for the lumber were placed with the defendant by the Northwest Lumber Agency with instructions to attach a sight draft to the bill of lading for 90 per cent of the invoice price. This was done with all but the last order, and the drafts were paid. The last invoice, to which through an oversight the draft was not attached, and the remaining 10 per cent of the former invoices, for which the defendant claims that the plaintiffs are liable, have never been paid.

We have carefully read and considered all of the testimony which was produced and offered, and while it may be true that some of the stockholders of the Northwest Lumber Agency, including the plaintiffs, as individuals did indirectly receive the benefits of the unpaid balance, there is no testimony which tends to show or from which a jury could find that in the placing of such orders the Northwest Lumber Agency was acting for or as the agent of the plaintiffs, or that the plaintiffs ever contracted for the lumber or authorized any contract to be made for them, or that they are liable on the counterclaims. Speaking in mining parlance, we are of the opinion that the defendant was on a blind lead in which his counsel after a vigorous and exhaustive search found a few colors, but never did find the pay-streak. The defendant's claim was and is against the Northwest Lumber Agency.

The judgment of the Circuit Court is affirmed.

AFFIRMED.

McBRIDE, C. J., and BEAN, J., concur.

BURNETT, J., Concurring.—The utmost the defense has shown by its testimony is that it sold lumber to the Northwest Lumber Agency, a corporation in which the plaintiffs had four shares of stock. All the witnesses who spoke on the subject say that the plaintiffs did not receive any of the lumber sold by the defendant or any of the proceeds of the sale thereof. There was no error in denying the defendant's offer of the unsigned draft of an agreement to the effect that thirteen lumber firms, including the plaintiffs, should sell their output exclusively to the Northwest Lumber Agency as it might require, with draft for 90 per cent of the price attached to each invoice. Such a contract would not make that concern agent for any of the parties agreeing to the arrangement. Moreover, even if they did sell to the Northwest Lumber Agency it seems that the defendant went and did likewise. It does not lie in the mouth of the latter to charge its fellow-sufferers with the default of the insolvent corporation by which they all came to grief. The defendant extended credit to the Northwest Lumber Agency. The stockholders of that corporation are not liable directly for its debts, nor in any event, except to the extent of their unpaid subscriptions to its capital stock: Article XI, Section 3, Oregon Constitution. Although such a liability may exist, it cannot be enforced in this action: *Macbeth* v. *Banfield,* 45 Or. 553 (78 Pac. 693, 106 Am. St. Rep. 670); *Patterson* v. *Lynde,* 106 U. S. 519 (27 L. Ed. 265, 1 Sup. Ct. Rep. 432). For these reasons I concur in the result of the opinion of Mr. Justice JOHNS.